IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUTHANNE HARTZELL,           )
                             )
            Plaintiff,       )
                             )
        v.                   )      Civil Action No. 03-1920
                             )
JO ANNE B. BARNHART,         )      Judge Cercone
COMMISSIONER, SOCIAL SECURITY )     Magistrate Judge Hay
ADMINISTRATION,              )
                             )
            Defendant.       )

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

        It is respectfully submitted that the Motion for
Summary Judgment filed by Plaintiff [dkt. no. 11] be denied.  It
is further recommended that the Motion for Summary Judgment filed
by the Defendant [dkt. no. 13] be granted and that the decision
of the Commissioner denying Plaintiff's application for
disability insurance benefits and supplemental security income be
affirmed.

II.  REPORT

        **A.   Procedural History**

        Ruthanne Hartzell brought this action under 42 U.S.C.
§§ 405(g) and 1383(c)(3) for judicial review of the final decision
of the Commissioner of Social Security ("Commissioner") denying
her claim for Supplemental Security Income ("SSI") under title
XVI of the Act, 42 U.S.C. §§ 1381-1383f.

In her application filed in March 1996, Ms. Hartzell alleged that she has been disabled since October 13, 1990, due to disc problems in her lower back and headaches (Tr. 78-79, 89). The state agency denied her application (Tr. 54-56, 59-61). The case proceeded to a hearing before an Administrative Law Judge (ALJ) on June 17, 1998, and on October 23, 1998, the ALJ found Ms. Hartzell was not disabled (Tr. 42-48). She appealed and on September 25, 2000, the Appeals Council remanded because of inaudible portions of the taped record and because the Appeals Council sought further consideration of Ms. Hartzell's maximum residual functional capacity, to include evidence from a vocational expert (Tr. 71-72).

The case was then heard before an ALJ on October 9, 2001 (Tr. 254-71). Ms. Hartzell, who was represented by counsel, and a vocational expert, Sam Edelmann, testified at this hearing (Tr. 254-71). The ALJ concluded in a decision dated November 29, 2001, that Ms. Hartzell retained the ability to perform light work activity (Tr. 25, Finding No. 6).

Ms. Hartzell requested review of the ALJ's decision by the Appeals Council (Tr. 8). The Appeals Council denied review of the ALJ's decision (Tr. 4-5). The decision of the ALJ thus became the Commissioner's final decision for purposes of this judicial review.

### B.   Factual Background

Ms. Hartzell was born on June 3, 1950, and was fifty-one years old at the time of the ALJ's decision (Tr. 78).  At the time of the hearing, Ms. Hartzell resided in St. Petersburg, Pennsylvania  (Tr. 254 ).  She has alleged disability since 1990, however, she has not worked since 1976 when she left the work force to start a family, and she has been receiving public welfare benefits as her sole means of financial support (Tr. 78, 89, 93).  Her work activity between 1970 and 1976 was extremely limited (Tr. 80-88).  Despite her alleged impairments, Ms. Hartzell indicated that she could sit for five to six hours per day, watch television, pay her bills, wash dishes, do laundry, and shop (Tr. 98-101).

### C.   Medical History

On February 9, 1996, Robert C. Luderer, D.O., examined Ms. Hartzell due to complaints of sudden onset of weakness on one side of her body (Tr. 135-36).  Dr. Luderer assessed a transient ischemic attack and/or migraine cephalgia/spinal headache (Tr. 135).  Ms. Hartzell also complained of diarrhea, nausea, vomiting, and a bulging disc in her back (Tr. 138).  Dr. Luderer noted that the alleged back problem was not resulting in any neurological deficits (Tr. 138).  A CT scan of Ms. Hartzell's head revealed a possible small meningioma, but was otherwise normal (Tr. 146).  An MRI of Ms. Hartzell's brain revealed possible early signs of multiple sclerosis, but was otherwise

3

normal (Tr. 148).  Dr. Luderer advised Ms. Hartzell to resume her normal activities (Tr. 135).

On June 5, 1996, Dr. Luderer performed an examination of Ms. Hartzell (Tr. 154-57).  Ms. Hartzell had complaints of arthritis and headaches (Tr. 154).  Dr. Luderer was aware that Ms. Hartzell had recently applied for social security benefits and that she had not worked since the birth of her first child (Tr. 154).  On examination, Ms. Hartzell had no atrophy or decreased sensation; normal reflexes, station, and gait; and intact ability to perform fine dextrous movements (Tr. 156).  Dr. Luderer noted an impression of migraine headaches, obesity, and early rheumatoid arthritis (Tr. 157).  On an assessment of Ms. Hartzell's ability to perform work activity, Dr. Luderer concluded that Ms. Hartzell could lift and/or carry twenty pounds occasionally, stand and/or walk for less than two hours in and eight-hour workday, and sit for an unlimited period of time provided that she could alternate between sitting and standing every two hours (Tr. 159).  Ms. Hartzell could never climb or crawl and could perform only limited reaching and handling (Tr. 160).

On June 25, 1996, a state agency physician completed a residual functional capacity (RFC) assessment relative to Ms. Hartzell's physical capabilities (Tr. 163-70).  This physician determined that Ms. Hartzell could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk

4

for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push/pull without limitation (Tr. 164).

On August 13, 1996, an ultrasound of Ms. Hartzell's pelvis was normal except for a small cyst on her left ovary (Tr. 171).

On September 3, 1996, a second state agency physician completed an FRC assessment (Tr. 174-81).  This physician determined that Ms. Hartzell could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push/pull without limitation (Tr. 175).  She could perform occasional postural maneuvers and limited handling and fingering (Tr. 176-77).

On September 16, 1996, Ms. Hartzell underwent bladder neck suspension surgery (Tr. 172).

On October 21, 1996, Ms. Hartzell reported to a counseling center for evaluation (Tr, 221-22).  Medical providers noted that Ms. Hartzell was a "self referral" (Tr. 221-22).  She stated that she had been depressed for the last six years, but that she had not previously sought mental health treatment (Tr. 221).

On November 15, 1996, Alan L. Summers, M.D., completed an examination of Ms. Hartzell (Tr. 218-20).  Ms. Hartzell again indicated that she had been feeling depressed since her husband had left her six years ago, but that she had never sought mental

health treatment during the intervening time (Tr. 218).  Ms.
Hartzell stated that her activities included watching television
and speaking with her mother and sister (Tr. 218).  On mental
status examination, Ms. Hartzell was oriented, clear, and goal-
directed with average intelligence and good insight and judgment
(Tr. 219).  Her mood was depressed, but her affect was
appropriate (Tr. 219).  Dr. Summers diagnosed panic disorder with
agoraphobia and dysthymic disorder (Tr. 220).  He rated Ms.
Hartzell's global assessment of functioning (GAF) score at

fifty[1], with a notation that during 1996, her highest GAF was sixty-eight[2] (Tr. 220).

By December 13, 1996, Dr. Summers indicated that Ms. Hartzell was no longer experiencing panic attacks and that her panic disorder was in remission (Tr. 216).  Ms. Hartzell's only remaining diagnosis was dysthymic disorder (Tr. 216).

---

[1]     A GAF score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale is divided into ten ranges of functioning. A GAF rating is within a particular decile if either the symptoms severity or the level of functioning falls within the range.

A GAF score of between 41 and 50 indicates:

> **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job).

A GAF score of between 51 and 60 indicates:

> **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **or moderate difficulty in social, occupational or school functioning** (i.e., few friends, conflicts with peers or co-workers).

Diagnostic and Statistical Manual of mental Disorders ("DSM-IV™") pp. 32-34 (American Psychiatric Association, Task Force on DSM-IV (4th ed. (Text Revised) 2000) (emphasis in original).

[2]     A GAF score of between 61 and 70 indicates:

> **some mild symptoms** (e.g. depressed mood and mild insomnia) **OR some difficulty in social occupational or school functioning** (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some personal meaningful relationships.

Id.

However, at some point in early 1997, Ms. Hartzell began to attend a "panic group" under Dr. Summers's supervision (Tr. 210-12).

On June 25, 1997, Dr. Summers reported that Ms. Hartzell had anxiety over her financial situation, but was sleeping and eating well (Tr. 207).  Ms. Hartzell had a "fairly bright" affect and was pleasant and cooperative (Tr. 207).  Dr. Summers described Ms. Hartzell's mood as "even" (Tr. 207).  Nevertheless, he continued to assess panic disorder and major depression (Tr. 207).

On October 3, 1997, Dr. Summers again indicated that Ms. Hartzell was pleasant and cooperative with more animation and only mild depression (Tr. 197).  However, he continued to assess panic disorder (Tr. 197).  Dr. Summers added obesity and migraine headaches to his diagnoses (Tr. 197).

On January 2, 1998, Dr. Summers reported that Ms. Hartzell's migraines were under better control with medications (Tr. 195).  He again indicated that Ms. Hartzell was pleasant and cooperative with only mild depression (Tr. 195).  On January 21, 1998, Dr. Summers reported that Ms. Hartzell's inability to sleep was due to caffeine use (Tr. 193).  He assessed panic disorder with agoraphobia, obesity, migraines, and insomnia secondary to caffeine use (Tr. 193).

8

On March 20, 1998, Dr. Summers reported that Ms. Hartzell was doing well and was eating and sleeping well (Tr. 191).

On June 13, 1998, Dr. Luderer completed an assessment of Ms. Hartzell's ability to perform work activity, finding that Ms. Hartzell could lift and/or carry twenty pounds occasionally, stand and/or walk for two to less than six hours in an eight-hour workday, sit for an unlimited period of time, and push/pull without limitation (Tr. 183-84).  Ms. Hartzell could never climb, balance, crouch, or crawl (Tr. 184).

On June 16, 1998, Ms. Hartzell's therapist handwrote the words "good," "fair," or "poor" on a photo-copied page from an unidentified text finding that Ms. Hartzell had a poor ability to maintain regular attendance and complete a work day or week without psychologically based interruptions (Tr. 185).  In all remaining areas, Ms. Hartzell had a "fair" or "good" ability to perform (Tr. 185).  Also on this date, Ms. Hartzell's therapist reported that Ms. Hartzell was more stable and confident (Tr. 187).  The therapist rated Ms. Hartzell's GAF score at fifty-seven (Tr. 186).

On November 29, 1999, Dr. Luderer examined Ms. Hartzell and reported that she continued to gain weight and had uncontrolled hypertension (Tr. 233).

On February 10, 2000, Dr. Luderer indicated that Ms. Hartzell had lost several pounds and that her gastrointestinal

9

reflux disease (GERD) was under control (Tr. 232).  She denied nervousness and depression and stated that her migraine headaches were under good control (Tr. 232).

On May 11, 2000, Dr. Luderer reported that Ms. Hartzell was doing well with no symptoms of GERD and with well-controlled migraine headaches (Tr. 232).  However, Ms. Hartzell had gained weight since her last visit (Tr. 232).

On August 8, 2000, Dr. Luderer reported that Ms. Hartzell was moderately overweight, but that her hypertension and migraine headaches were fairly well controlled (Tr. 231).

On December 19, 2000, Dr. Luderer made identical findings and added that Ms. Hartzell had lost weight (Tr. 231).

On April 16, 2001, Dr. Luderer reported that Ms. Hartzell was doing well clinically, but was gaining weight again (Tr. 229).  He discussed diet and weight loss with Ms. Hartzell (Tr. 229).

On July 6, 2001, an x-ray of Ms. Hartzell's right knee revealed probable early degenerative changes (Tr. 244).

On August 15, 2001, Dr. Luderer again discussed weight loss with Ms. Hartzell stating that this was the key to her treatment, including her treatment for knee problems (Tr. 229). Dr. Luderer also stressed the importance of exercise (Tr. 229). He assessed degenerative joint disease of the knees with minimal crepitance and swelling and intact ligaments and ceciates (Tr. 229).

10

On September 3, 2001, Dr. Luderer completed a medical source statement regarding Ms. Hartzell's ability to perform work activity (Tr. 226-28).  He determined that Ms. Hartzell could lift and/or carry eleven to twenty pounds occasionally, sit for four hours in an eight-hour workday, stand for two hours in an eight-hour workday, and walk for one hour in an eight-hour workday (Tr. 226-27).  She could never perform postural maneuvers due to obesity and was required to avoid heights (Tr. 227-28).

On October 10, 2001, Ms. Hartzell's attorney wrote a letter to Dr. Luderer requesting that he answer certain questions, which answers would be submitted in support of Ms. Hartzell's application for SSI (Tr. 250-51).  Dr. Luderer indicated on the form questionnaire that Ms. Hartzell had to lie down for extended periods of time due to migraine pain, had radiating pain in both legs, and had diarrhea as a side-effect from her medications which could produce ten to twelve bowel movements per day (Tr. 251).

### C.   Hearing Testimony and ALJ Decision

At the hearing on October 9, 2001, Ms. Hartzell testified that her disabling impairments, including her migraine headaches and radiating leg pain, had existed since 1990 (Tr. 257).  She indicated that she could sit for one hour at a time and stand for one hour at a time (Tr. 266).

A vocational expert (VE) present at the hearing testified in response to a hypothetical question involving a

11

person of Ms. Hartzell's age, education, and work experience who could perform light work with a sit-stand option (Tr. 268-69). The VE responded that such a person could perform a significant number of jobs in the local and national economies, including hand packer and cashier (Tr. 268).

In his decision, the ALJ found that Ms. Hartzell had degenerative joint disease, exogenous obesity, and chronic migraine headaches, impairments that were severe, but that did not meet or equal the criteria for any of the listed impairments (Tr. 24, Finding Nos. 2-3). The ALJ further found that Ms. Hartzell's allegations regarding her limitations were not entirely credible (Tr. 24, Finding No. 4). Based on the evidence of record, the ALJ determined that Ms. Hartzell retained the ability to perform a full range of light work (Tr. 25, Finding No. 6). In reliance upon the testimony of a VE, the ALJ concluded that Ms. Hartzell could perform a significant number of jobs in the local and national economies and, thus, was not disabled under the Act (Tr. 25, Finding Nos. 10-11).

### D.    Standard of Review

In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Substantial evidence is defined as less than a preponderance and more than a mere scintilla.  Perales, 402 U.S. at 402.  If supported by substantial evidence, the Commissioner's decision must be affirmed.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is used to determine disability eligibility, see 20 C.F.R. § 404.1520, but in this case only step five is in dispute.[3]  At the fifth step, the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity,[4] age, education, and past work experience, he can perform work that exists in significant numbers in the

---

[3]    The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.

[4]    A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

13

regional or national economy.  42 U.S.C. § 423(d)(2)(A); <u>see also</u>
<u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5 (1987); <u>Sykes v. Apfel</u>,
228 F.3d 259, 263 (3d Cir. 2000).

**E.   Discussion**

The Act defines disability in terms of the effect an
impairment has on a person's ability to function in the work
place.  42 U.S.C. § 1382(a)(3)(A); <u>See</u>, <u>Heckler v. Campbell</u>, 461
U.S. 458, 460 (1983).  To be eligible for SSI, a claimant bears
the burden of showing not only that she has a medically
determinable impairment, but that it is so severe that it
prevents her from engaging in any substantial gainful activity
that exists in the national economy.  42 U.S.C. §§ 1382c
(a)(3)(A),(3)(B); <u>see</u>, <u>Heckler v. Campbell</u>, 461 U.S. at 460.  The
responsibility for determining whether a claimant is disabled
under the Act is reserved to the Commissioner.  20 C.F.R. §
416.927(e) (2004).  In this case, the ALJ found Ms. Hartzell not
disabled at the fifth step of the sequential evaluation process
utilized by the Commissioner in making disability determinations
(Tr. 14-25).

Ms. Hartzell argues that the ALJ failed to accord
proper weight to the opinion of her treating physician, Dr.
Luderer, and her treating psychiatrist, Dr. Summers, in making
the determination as to whether or not she could perform light
work activity (Pl.'s Br. at 14-23).  Ms. Hartzell also argues

14

that the ALJ was required to obtain an opinion from a consultative examiner before making his decision with regard to the weight to be given to the medical opinions of record (Pl.'s Br. at 23-24).  We address this last argument first.

It is only where the medical documentation is insufficient, or unclear that the ALJ should secure additional evidence.  See, Ferguson v. Schweiker, 765 F. 2d 31, 36 (3rd Cir. 1985).  Moreover, the duty to develop the record does not require a consultative examination at government expense unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision.  20 C.F.R. §§ 404.1517, 416.917; Turner v. Califano, 563 F.2d 669, 671 (5th Cir. 1977).  Here, as discussed in detail below, the ALJ had ample evidence in the record on which to base his decision, and Ms. Hartzell has not established that an additional consultative examination was necessary.

Turning to the argument that the ALJ did not give proper weight to treating physicians' opinions in this case, we note that generally, the Commissioner will give enhanced weight to the findings and opinions of treating physicians.  20 C.F.R. § 416.927(d)(2).  However, the Commissioner is not bound by a treating physician's opinion on the issue of the nature and severity of the claimant's impairment.  20 C.F.R. § 416.927(d)(2).  In order to be entitled to controlling or great weight, a treating physician's opinion must be "well-supported by

medically acceptable clinical and laboratory diagnostic techniques," and must not be "inconsistent with  the other substantial evidence" in the record.  20 C.F.R. § 416.927(d)(2), (3).  When a physician's opinion is not supported by clinical observations or data, it is not entitled to particular deference. 20 C.F.R. § 416.927(d)(2).  When there is contradictory evidence, an ALJ may reject the opinion of the treating physician outright, or may afford the opinion more or less weight depending on the extent to which it is supported.  See Plummer v. Apfel, 186 F. 3d 422, 429 (3d Cir. 1999).

We find that Dr. Luderer's opinions are not entitled to controlling weight because they are inconsistent with and unsupported by the other objective evidence of record.  The ALJ thoroughly considered the various and conflicting assessments of Dr. Luderer, and properly accorded limited weight to these opinions for a number of reasons (Tr. 22-23, 159-60, 183-84, 226-28).  Initially, as the ALJ noted, Dr. Luderer's opinions are not controlling because the decision on the ultimate issue as to whether a claimant meets the statutory definition of disability is reserved to the Commissioner, who will not give any special consideration to the source of another opinion on this issue.  20 C.F.R. § 416.927(e)(1), (3)(Tr. 23).  In addition, because Dr. Luderer's opinions are unaccompanied by any substantiating clinical tests or observations in the form of notations on his functional capacity assessments, they are not entitled to

16

deference.  See 20 C.F.R. § 416.927(d)(2), (3) (in order to be
entitled to significant weight, a treating physician's opinion
must be "well-supported by medically acceptable clinical and
laboratory diagnostic techniques").  Dr. Luderer's RFC
assessments consist mostly of check-marks in designated locations
with only modest annotation (Tr. 159-60, 183-84, 226-28).  His
three assessments of Ms. Hartzell's ability to perform work
activity vary to such an extent that the ALJ properly did not
give them significant weight since medical opinions from treating
sources are only entitled to controlling weight to the extent
that they are consistent.  See 20 C.F.R. § 416.927(d)(4) (Tr.
23).  As well, Dr. Luderer's opinions are markedly inconsistent
with the other medical evidence of record.  See Knight v. Chater,
55 F.3d 309, 314 (7th Cir. 1995)(stating that an ALJ may reject
the opinion of the treating physician where it is internally
inconsistent).

          As the ALJ noted, Dr. Luderer's treatment notes
consistently indicated that Ms. Hartzell had normal examination
findings with the exception of persistent weight fluctuation and
occasional uncontrolled hypertension, and that Ms. Hartzell's
symptoms were "well-controlled" (Tr. 154-57, 171, 229-33).  See
Spickle v. Bowen, 673 F. Supp. 743, 744 (W.D. Pa. 1987) (holding
that where a physician contradicts himself and there is
countervailing evidence, the physician's opinion may be
discounted).  While Ms. Hartzell claims that the ALJ was

"selective" in the records he chose to review, we do not find
that to be the case from our review of the record.  Further, Ms.
Hartzell points to nothing in the record to support her argument
that Dr. Luderer believed that her symptoms vacillated from
"well-controlled" to completely disabling at various times during
her treatment (Pl.'s Br. at 15-16).

        We note that the conclusions of Dr. Luderer were also
inconsistent with the findings of two state agency experts, both
of whom determined that Ms. Hartzell could perform light and/or
medium work activity (Tr. 163-70, 174-81).  Because state agency
consultants are "highly qualified" medical professionals and
"experts in the evaluation of the medical issues in disability
claims under the Act," their opinions on the severity of a
claimant's conditions are entitled to weight.  <u>See</u> 20 C.F.R. §
416.927(f)(2)(I); <u>see also</u>  <u>Jones v. Sullivan</u>, 954 F.2d 125, 128
(3d Cir. 1991) (stating that an ALJ may provide limited weight to
the opinion of a treating physician based upon contradictory
findings of a state agency physician).

        Turning to Ms. Hartzell's argument that the ALJ did not
accord proper weight to the opinion of Dr. Summers, we perceive
that Ms. Hartzell is referring to the opinion of her treating
therapist, Raymond D'Angelo, who it appears is not a psychiatrist
or psychologist, rather than to an opinion issued by Dr. Summers
since we find no opinion of record from Dr. Summers concerning
Ms. Hartzell's functional limitations (Tr. 185).  It appears that

Mr. D'Angelo is not an "acceptable medical source" as defined in
the regulations and, thus, the ALJ need not have considered Mr.
D'Angelo's opinion on the question of whether Ms. Hartzell has a
medically determinable impairment.  See 20 C.F.R. § 416.913(a).

It is clear, however, that the ALJ considered Mr.
D'Angelo's opinion and provided a number of well-supported
reasons for according limited weight to it.  As the Commissioner
points out, the ALJ referenced the following evidence in support
of his conclusion that Ms. Hartzell was mentally capable of
performing work activity:

- Ms. Hartzell's lack of mental health treatment prior to
  her self-referral for counseling (Tr. 16, 218-22);

- Ms. Hartzell's completely normal range of daily
  activities (Tr. 16, 98-100, 135, 218);

- Dr. Summer's report that Ms. Hartzell's alleged panic
  disorder was in remission only three months after her
  initial counseling sessions (Tr. 17, 216);

- the treating mental health providers' overall GAF
  ratings indicating that Ms. Hartzell had only moderate
  symptoms (Tr. 17, 186, 220);

- Dr. Summer's report that Ms. Hartzell was oriented,
  clear, and goal-directed, with average intelligence and
  good judgment (Tr. 16-17, 219);

- Ms. Hartzell's reports that her alleged mental health
  symptoms had decreased significantly with use of
  medications (Tr. 17, 191, 195, 197, 207, 214-16);

- The treating therapist's notations that Ms. Hartzell
  was socializing and feeling better and that her overall
  level of symptomatology remained at only the moderate
  level (Tr. 17);

- The absence of support for Ms. Hartzell's alleged panic
  attacks in Dr. Luderer's notes, and her denial of

19

depression or other mental health symptoms in her
visits to this physician (Tr. 17-18, 232);

- Ms. Hartzell's allegation that her mental health
  symptoms had first bothered her nearly six years before
  she sought treatment for them, combined with the fact
  that her pursuit of treatment at this time coincided
  with the date of the Agency's initial denial of her
  application for benefits (Tr. 18, 218-22); and

- the reports in the mental health records that, shortly
  after Ms. Hartzell began counseling, her symptoms had
  decreased (Tr. 18, 187, 191, 195, 197, 207, 214-16).

Ms. Hartzell also argues that the ALJ's hypothetical
question to the VE was deficient because on remand, the ALJ
formulated the hypothetical question based upon the evidence of
record rather than obtaining new or supplemental evidence on the
question of Ms. Hartzell's functional limitations.  This argument
is based upon the case of Donahue v. Massanari, 166 F. Supp. 1143
(E.D. Mich. 2001).  In that case, the district court found there
was not sufficient evidence to support the finding that the
plaintiff could perform a full range of light work and, thus,
remanded the case for further consideration, including to obtain
additional evidence concerning plaintiff's limitations as well as
supplemental vocational evidence.  On remand, the ALJ obtained
neither new medical evidence nor supplemental evidence or
testimony concerning the plaintiff's RFC.

By contrast, in the instant case, the matter was
remanded by the Appeals Council not because there was
insufficient evidence in the record for the ALJ to make a well-
supported determination, but because the evidence already of

record supported a finding of greater functional abilities than those identified in the initial ALJ's decision of October 23, 1998 (Tr. 70-72). Thus, the remand was not for lack of substantial evidence, but was instead for a necessary reconsideration of the already existing evidence.

Because Ms. Hartzell's RFC did not directly coincide with any of the specific exertional ranges identified in the Grids, the ALJ followed the controlling regulations and sought vocational expert testimony. 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).[5] An ALJ may rely on the services of a vocational expert in deciding whether a claimant has work skills that can be used in specific occupations. 20 C.F.R. § 416.966(e). The testimony of a vocational expert constitutes substantial evidence for purposes of judicial review where the

---

[5]   Ms. Hartzell's argument that Grid rule 201.09 should be applied to this case is misplaced (Pl.'s Br. at 25-26). Rule 201.09 is utilized for persons who retain the residual functional capacity for sedentary work. In this case, the ALJ properly determined that Ms. Hartzell was capable of performing light level work. Thus, the Grid rules for sedentary work are irrelevant.

Ms. Hartzell also argues that she is precluded from performing light work because of the provisions of Social Security Ruling (SSR) 83-10 (Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2). This argument must fail, however, since the portion of SSR 83-10 relied upon by Ms. Hartzell applies only to those cases where the Grids are being used as the determining guideline for establishing disability. It does not apply where, as here, the Grids are consulted only as a framework for decision making in conjunction with the testimony of a vocational expert. Because Ms. Hartzell's ability to perform light work was reduced by her need for a sit-stand option, the ALJ consulted with a VE after utilizing the Grids solely as a framework for decision making (Tr. 268-69).

21

hypothetical questioning considers all significant impairments
which are supported by the medical record.  See Chrupcala v.
Heckler, 829 F. 2d 1269, 1276 (3d Cir. 1987); Plummer v. Apfel,
186 F. 3d 422 (3d Cir. 1999).  The ALJ is not required to credit
vocational expert testimony in response to a hypothetical
question based on a claimant's subjective complaints.  See
Craigie v. Bowen, 835 F.2d 56,  57-58 (3d Cir. 1987).  Only those
limitations that are supported by the record must be included.
See Chrupcala v. Heckler, 829 F. 2d 1269, 1276 (3d Cir. 1987).

        In this case, the ALJ posed a question to the VE that
included all limitations supported by the record involving a
person of Ms. Hartzell's age, education, and work experience who
could perform light work with a sit-stand option (Tr. 268-69).
The VE responded that such a person could perform a significant
number of jobs in the local and national economies, including
hand packer and cashier (Tr. 268-69).  As discussed previously,
because the ALJ correctly determined that the limitations
identified in the form reports of Dr. Luderer and Mr. D'Angelo
were not supported by the record, he was not required to include
those limitations in the hypothetical question to the VE.   Id.

        Summary judgment is appropriate when there are no
disputed material issues of fact, and the movant is entitled to
judgment as a matter of law.  Fed.R.Civ.P. 56; Edelman v.
Commissioner of Social Sec., 83 F.3d 68, 70 (3d Cir. 1996).  In
the instant case, there are no material factual issues in

22

dispute, and it appears that the ALJ's conclusion is supported by substantial evidence.  For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   1 September, 2005.

cc:  Hon. David S. Cercone
     United States District Judge

     R. Christopher Brode, Esq.
     BRODE LAW FIRM
     305 Walnut Street
     Meadville, PA 16335

     Paul Kovac
     Assistant United States Attorney
     United States Attorney's Office
     700 Grant Street
     Suite 400
     Pittsburgh, PA 15219

23